Timothy L. Alger (SBN 160303)
tlalger@algerlawapc.com
ALGER LAW APC
233 E. Carrillo St., Suite C
Santa Barbara, CA  93101
Telephone:  805-245-8215

Attorneys for Plaintiff WOW Media Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| WOW MEDIA INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> DOES 1 THROUGH 10, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff WOW Media Inc., a California corporation ("Plaintiff" or "WOW"), and complains and alleges against Defendants, herein identified by the fictitious names Does 1 through 10, inclusive (collectively, "Defendants"), as follows:

## SUMMARY OF ACTION

1.      This case arises out of the unlawful interference by unknown parties in a business transaction wherein two private equity firms, Davidson Kempner Capital Management LP ("Davidson Kempner") and InfraNext Partners, LLC ("InfraNext") (collectively, the "Investors"), were to make a substantial investment in WOW. Defendants purposefully interfered with the relationship by knowingly publishing false information to the Investors regarding WOW's assets, causing the Investors to

withdraw from the transaction.

## THE PARTIES

2.     Plaintiff WOW Media Inc. is, and at all times mentioned herein was, a corporation existing under and by virtue of the laws of the State of California.  WOW is in the business of outdoor advertising.

3.     The true names and capacities of Defendants sued herein as Does 1 through 20, inclusive, are unknown at this time to Plaintiff, and Plaintiff therefore sues said Defendants by fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will amend this Complaint to allege the true names and capacities of the Defendants when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants is responsible in some manner for the occurrences, acts and omissions alleged herein, and that Plaintiff's damages would have been, and will be, proximately caused by their conduct.  Among other things, Defendants may be held directly liable for tortiously interfering with prospective economic advantage, and for unlawful and unfair business practices in violation of Business & Professions Code section 17200.

4.     In doing the acts and things described below, Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, were the agents, employees, partners, joint venturers, co-conspirators, owners, principals, and/or employers of the other Defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture.  Plaintiff is further informed and believes, and based thereon alleges, that the acts and things described below were known to, authorized and/or ratified by the officers, directors, and managing agents of Defendants, and each of them.

## JURISDICTION AND VENUE

5.     Jurisdiction and venue are proper in this Court because Defendants'

actions were intentional and were purposefully directed at, and caused injury to Plaintiff, in Los Angeles County, California, and Defendants had knowledge that their actions would likely cause harm in Los Angeles County, California.  Plaintiff asserts the Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) on the basis that the dispute involves citizens of different states and the amount in controversy exceeds $75,000.  Upon approval of the Court, Plaintiff will conduct discovery to confirm the citizenship of each of the Defendants and amend this Complaint accordingly.  *See Gardiner Family, LLC v. Crimson Resource Management Corp.*, 147 F.Supp.3d 1029 (E.D. Cal. 2015) (approving use of Doe pleading in diversity cases because it is a California substantive law); *Construction Management and Development-Nevada, LLC v. Liberty Club Resorts*, LLC, 2019 WL 4149437 (C.D. Cal. June 24, 2019) (same).

## GENERAL ALLEGATIONS

**A.**    **The Planned Transaction**

6.      WOW owns a multimillion dollar network of 11 outdoor, large-format advertising structures bearing 20 high-definition LED displays in the City of Inglewood ("City"), pursuant to agreements with the City.  Those agreements authorize WOW to erect, maintain and manage the display of paid advertising on the networked displays, which are located on sites owned by the City or private property owners in Inglewood.  Wow shares the revenue received from advertisers with the City pursuant to negotiated agreements with the City that were approved by the City Council in 2015 in a public process.

7.      The negotiated agreements with the City are unique and valuable to both WOW and the City (and its residents), given the commercial terms and the fact that Inglewood has a high volume of visitors to its sports and entertainment facilities and is adjacent to Los Angeles International Airport.  Competition for the right to erect digital signs in Inglewood was intense, and it would be unsurprising if one or more individuals and entities wished to obtain outdoor digital advertising rights in the City,

notwithstanding the City's agreements with WOW.

8. In July 2021, WOW retained an investment bank, PJ Solomon, L.P., and began entertaining offers for investment in the company. Each potential purchaser was required to execute a non-disclosure agreement ("NDA") that provided, *inter alia*, that

> Unless otherwise required by law . . . neither you nor any of your Access Persons will, without the prior written consent of the Company, disclose to any person (other than Access Persons) any information about the Transaction, or the terms, conditions or other facts relating thereto, including, but not limited to, the fact that discussions are taking place with respect thereto, or the status thereof, or the fact that the Proprietary Information has been made available to you.

9. Davidson Kempner executed such an NDA on or about December 16, 2021. It is unknown to WOW at this time, but one or more of the Defendants may also have executed such an NDA. Among the companies that executed NDAs were direct competitors of WOW in the Los Angeles metropolitan area outdoor advertising market.

10. In the spring of 2022, WOW reached an agreement in principal with the Investors, Davidson Kempner and InfraNext, by the terms of which Investors were to invest significant funds in WOW. The investment would provide direct and immediate financial benefit to the current owners of WOW, while allowing them to remain in control of business operations and creating opportunities for future liquidity and expansion of the business.

**B.     The False Outdoor Advertising Review**

11. During the final stages of negotiations, Louis Littman ("Littman"), a principal at Davidson Kempner, received a leaked copy of a final report issued by the Federal Highway Administration ("FHWA") dated June 16, 2022 (the "Outdoor

Advertising Review"). The Outdoor Advertising Review criticized the California Department of Transportation ("Caltrans") for allegedly failing to comply with the federal Highway Beautification Act and raised the possibility that the federal government would reduce highway funding for California if the state did not come into compliance. The sudden issuance of the final report in late June 2022 (two years after the preparation of a draft report) and its receipt by Littman only days before the scheduled closing of the transaction suggests that unknown individuals or entities caused the Outdoor Advertising Review to be issued and leaked at that particular time for the purpose of interfering with the agreement and relationship between WOW and the Investors.

12. According to documents disclosed by Caltrans pursuant to a state Public Records Act request, the Outdoor Advertising Review and a cover letter from Vincent Mammano ("Mammano"), the FHWA's California Division Administrator, were transmitted by email from the FHWA to Steven Keck, Caltrans' Acting Director, on June 23, 2022. That same day, Srikanth Balasubramanian ("Balasubramanian"), Deputy Division Chief of Caltrans Division of Traffic Operations, forwarded the Outdoor Advertising Review to others within Caltrans by email and suggested a meeting with Caltrans' incoming Director, Tony Tavares ("Tavares") and the Legal Department "either late next week or the July 4th week." Balasubramanian told the recipients within the agency, "I want us to be prepared with our actions as soon as we can, *before discussing this with others internally or externally*." (Emphasis added.)

13. Among other things, the Outdoor Advertising Review questioned the legality of nine of the digital displays owned by WOW, on the basis that two of the sign structures (located on the right-of-way for La Cienega Boulevard) were visible from Interstate 405, a federal highway, and the seven other displays were visible from surface streets that qualified as "principal arterials" subject to the state Outdoor Advertising Act ("ODA"), but had not received permits from Caltrans.

14.    Shortly after the leak of the Outdoor Advertising Review, Caltrans acknowledged that the document was significantly flawed and contained wildly incorrect conclusions. Though the Outdoor Advertising Review claimed that virtually all of the networked displays were illegal and in violation of state law, Caltrans quickly acknowledged that it did not even have jurisdiction over the majority of the displays.  Tavares, Caltrans' new Director, stated in a letter to Mammano at the FHWA on August 17, 2022 that only two WOW sign structures visible from Interstate 405 were within Caltrans' jurisdiction.  Also, in response to an inquiry from WOW, Caltrans acknowledged that signs on principal arterials were subject to the federal Moving Ahead for Progress in the 21st Century Act ("MAP-21"), but the state Legislature had not brought the ODA into compliance with MAP-21, and therefore no permit from Caltrans was required.  The two sign structures visible from Interstate 405 also had been approved by the City and by Caltrans.  Not only were the two displays within Caltrans' jurisdiction in full compliance with state law, but they were also subject to a contract with the State of California permitting Caltrans to place public service announcements on the signs.  Caltrans had also approved a contract allowing WOW to remove trees which impaired the visibility of these two displays to drivers on Interstate 405.

15.    Littman indisputably received the Outdoor Advertising Review – with its unfounded allegations regarding WOW's signs – no later than July 7, 2022, *within two weeks of its receipt by Caltrans.*  Littman received the Outdoor Advertising Review from an unknown party employed by Caltrans, or someone in contact with employees of Caltrans, between June 23, 2022 and July 7, 2022 despite Balasubramanian's clear directive to his colleagues within Caltrans not to discuss the document internally or externally.

16.    Indeed, email communications between WOW and Davidson Kempner's attorneys suggest that Davidson Kempner and its lawyers possessed a copy of the June 2022 Outdoor Advertising Review as early as July 1, 2022.

17.     The Outdoor Advertising Review was not made available to the public; rather, it was conveyed by federal officials to state highway officials for review and response.  To date, the Outdoor Advertising Review has not been posted on the Caltrans website or otherwise generally distributed to the public.

18.     Littman began using the Outdoor Advertising Review in his business dealings *at least seven weeks* before the document was emailed to Inglewood Mayor James T. Butts by Gloria Roberts ("Roberts"), the Acting Caltrans District 7 Director, on August 31, 2022.

19.     The Outdoor Advertising Review must have been leaked by someone immediately after its receipt by Caltrans, and a recipient of the leaked document delivered it to Littman, apparently with the knowledge that Davidson Kempner had entered into an agreement to acquire WOW.  On information and belief, the manner in which Davidson Kempner obtained the document violated the terms of the NDA, because (given that the Outdoor Advertising Review had not been publicly disseminated) Davidson Kempner necessarily disclosed to its source that it was planning an investment in WOW.

## C.     The Collapse of the Transaction

20.     On July 7, 2022, Littman contacted Scott Krantz ("Krantz"), WOW's chief executive officer, and Mark Boidman ("Boidman"), WOW's investment banker, and confronted them about the Outdoor Advertising Review.  Krantz and Boidman had no knowledge at the time regarding the issuance of the final Outdoor Advertising Review; indeed, Krantz and Boidman were under the impression during the call that Littman was referring to a *draft* of the review prepared in 2020, which had never been finalized by the FHWA, and which was known to but had not been of concern to the Investors.

21.     On July 8, 2022, Littman contacted Scott Troeller ("Troeller"), a partner at InfraNext, and sent him a copy of the Outdoor Advertising Review, in two emails

because of the document's size.  Troeller asked Littman about the source of the June 2022 Review, but Littman declined to identify the source to Troeller.

22.     In a conference call involving 19 of the principals, investment bankers, and lawyers for the parties on July 11, 2022, Littman began talking about the Outdoor Advertising Review and apparently assumed that WOW's principals and representatives were aware of it.  However, WOW and its representatives were not aware of the report (other than Littman's confusing call with Krantz and Boidman on July 7, 2022), and had not received or reviewed it.  When Krantz asked Littman during the call where he had gotten the report, Littman responded that he could not reveal who gave it to him because he received the report "in confidence."  Krantz asked Littman to send him a copy of the Outdoor Advertising Review so he could properly address Littman's concerns.

23.     Littman forwarded a copy of the report to Krantz and Boidman the following day, July 12, 2022.  A forensic specialist has reviewed a copy of the document provided by Littman and determined that it has been scrubbed of metadata, so its source could not be determined.

24.     On July 13, 2022, Littman called Krantz and told him the deal was dead as a result of the Outdoor Advertising Review.

**D.     Plaintiff's Efforts to Identify the Defendants**

      **i.     Caltrans' Destruction of Public Records and Evidence**

25.     WOW has endeavored to determine how the Outdoor Advertising Review was leaked to Davidson Kempner, and has served requests on Caltrans under the California Public Records Act ("CPRA"), and on the FHWA under the federal Freedom of Information Act ("FOIA").  On September 29, 2022, WOW requested disclosure by both agencies of all communications regarding the final and the draft Outdoor Advertising Review with entities and individuals outside their respective agencies.  Caltrans eventually disclosed about 35 emails.  The FHWA has thus far disclosed no records to WOW.

26.     Caltrans' behavior over the past two years suggests that the agency has engaged in a cover-up of wrongdoing by its employees.  Rather than assisting WOW in determining how the Outdoor Advertising Review was selectively leaked by the agency to private parties for the apparent purpose of harming WOW, Caltrans violated (and continues to violate) the CPRA by delaying, without justification, the disclosure of public records requested by WOW for nearly a year, by performing an inadequate search for requested records, by engaging in evasion and obfuscation regarding its search for and production of documents, and, most seriously, by destroying public records after they were requested by WOW and after the initiation of litigation.

27.     In response to the Requests, Caltrans made available on October 6, 2022, through its online public records portal, *just 11 emails* dated between June 23, 2022 and September 19, 2022.  Caltrans acknowledged in depositions that the records produced on October 6, 2022 came solely from the files of George Anzo ("Anzo"), chief of the Outdoor Advertising Division.  The agency has acknowledged that it engaged in no other search for records in response to Petitioner's requests at that time.

28.     Only after WOW challenged the adequacy of the disclosure by letter from counsel on October 26, 2022, and WOW filed a petition for writ of mandamus on November 8, 2022 under California Government Code sections 7920.000, *et seq*., entitled  *Wow Media Inc. v. California Department of Transportation*, Superior Court for the County of Los Angeles, Case No. 22STCP04006 ("CPRA Action"), did Caltrans engage in any meaningful search for responsive public records.  About 25 emails were produced in August 2023, 11 months after the requests were made and 10 months after the CPRA Action was filed.  (The counting is inexact because some documents produced by Caltrans included duplicate emails.)

29.     No communications at all were produced by Caltrans relating to the draft Outdoor Advertising Review dated September 2020.  Further, no

communications at all were produced by Caltrans during the period between the creation of the draft September 2020 Review and the final June 2022 Review, although Caltrans eventually acknowledged in deposition that it was involved in the research and preparation of both reports.  Anzo was identified in the Outdoor Advertising Review as a contributor to the report, and Caltrans necessarily circulated the September 2020 Review inside and outside of the agency and communicated with the FHWA regarding September 2020 Review during that period.

30.     Most importantly for WOW, Caltrans did not produce any communications relating to the final June 2022 Outdoor Advertising Review between individuals inside Caltrans and persons not employed by Caltrans during the period following Caltrans' receipt of the final June 2022 Review from the FHWA on June 23, 2022.  In addition to violating the CPRA, WOW believes and contends that Caltrans has intentionally engaged in destruction of evidence vital to the claims made in this action and a pending civil action entitled *Wow Media Inc. v. Does 1 through 20, Inclusive,* Superior Court for the County of Los Angeles, Case No. 23STCV15666 ("State Civil Action"), which is discussed in greater detail below.

31.     Deposition testimony in the CPRA Action has confirmed that Caltrans made no efforts to preserve requested records after they were requested by WOW.  Nor did Caltrans preserve the requested records after the filing of the CPRA Action in Superior Court, despite its obligation to do so under the California Discovery Act.  Two depositions and follow-up correspondence with counsel for Caltrans revealed that:

　　　　a.　　Caltrans automatically deletes emails not placed in Outlook folders 120 days after their receipt, and those emails that are placed in folders are retained for two years.  *This automatic deletion occurs even if the emails contain substantive content relevant to the operation and activities of the agency*.

　　　　b.　　In contrast, Caltrans retains documents in folders involving outdoor advertising violations indefinitely, and documents in

folders relating to closed outdoor advertising matters for 10 years.

c.   *After receiving WOW's requests made through the Caltrans public records portal on September 29, 2022, Caltrans made no effort to preserve the requested emails.*  This was subsequently confirmed in writing by Caltrans' attorney, Justin Lynch ("Lynch").  Any responsive emails that were not placed in folders by the authors or recipients at Caltrans were automatically deleted after 120 days, notwithstanding WOW's requests.

d.   *After receiving a Verified Petition for Writ of Mandate filed by Wow Media on November 8, 2022 ("Petition"), Caltrans did not suspend the auto-deletion program or otherwise act to preserve emails that were responsive to the requests that had been made on September 29, 2022.*  That Caltrans did not pause the automatic deletion of emails after commencement of the litigation also was subsequently confirmed in writing by Lynch.

e.   *No "litigation hold" notice was sent to Caltrans employees.*  In deposition, Anzo indicated that any unfoldered email more than 120 days old would have been deleted notwithstanding the filing of the Petition – possibly resulting in spoliation of evidence.

f.   A search of email accounts was performed on an unknown date by Caltrans' IT department, but Anzo declined at deposition to provide any details, and Caltrans' attorney asserted attorney-client privilege regarding an internal meeting relating to such a search.

25.   After Anzo's deposition, WOW's counsel initiated a meet-and-confer with Caltrans by sending Lynch, counsel for Caltrans, a letter raising the following issues:

a.   In light of Anzo's testimony that Caltrans automatically deletes emails not placed in Outlook folders 120 days after their receipt,

1    WOW's counsel asked if Lynch would provide "any legal
2    authority that you might have that authorizes Caltrans to destroy
3    emails that qualify as public records under the California Public
4    Records Act ("CPRA") after 120 days?"

5    b.    Given Anzo's testimony that Caltrans retains documents in
6          folders involving outdoor advertising violations indefinitely, and
7          documents in folders relating to closed outdoor advertising
8          matters for 10 years, WOW's counsel asked, "What is the basis
9          for that practice, and what is the agency's rationale for treating
10         emails differently from other documents?"

11   c.    WOW's counsel asked, after receiving the WOW's requests made
12         through the Caltrans public records portal on September 29, 2022,
13         "[w]hat, if anything, did Caltrans do to preserve emails that were
14         responsive to the requests?"  WOW's counsel also asked for
15         confirmation of Anzo's testimony suggesting that no effort to
16         preserve requested emails was made after the CPRA requests
17         were submitted.  WOW's counsel also asked, "Did Caltrans
18         suspend the automatic deletion process for the email accounts of
19         persons at Caltrans who might have responsive documents?  If
20         not, why not?"

21   d.    WOW's counsel asked, after receiving the Petition, "what, if
22         anything, did Caltrans do to preserve emails that were responsive
23         to the requests made on September 29, 2022?"  Since Anzo
24         testified that he was unaware of any "litigation hold" notice to
25         Caltrans employees, WOW's counsel asked whether emails would
26         have been deleted notwithstanding the filing of the Petition –
27         possibly resulting in spoliation of evidence.  WOW's counsel also
28         asked, "If it is Caltrans' position that it was not required to

-12-
COMPLAINT

1                      preserve evidence in a civil action in which the agency is a

2                      defendant, would you please provide me with authority supporting

3                      this position?"

4        e.      WOW's counsel asked whether "Caltrans *ever* suspended the

5                      automatic email deletion process for email accounts of any

6                      Caltrans employees or contractors as a result of my CPRA

7                      requests or the filing of the Petition?"

8        f.       WOW's counsel asked whether emails that were automatically

9                      deleted were retained anywhere thereafter.  "Does Caltrans' email

10                      provider or Caltrans' email servers retain deleted emails for a

11                      period of time after deletion, even if only temporarily?  Mr. Anzo

12                      was not sure about this."  WOW's counsel also asked, "Has the

13                      agency done anything to recover responsive emails that might

14                      have been deleted?  Does Caltrans make and retain any backup of

15                      its email servers?  Does Caltrans have an ability to access deleted

16                      emails from late June and early July 2022?"

17        g.     WOW's counsel went on to ask, "If Mr. Anzo was incorrect, and

18                      Caltrans actually distributed a 'litigation hold' notice within the

19                      agency relating to this litigation, would you please state when that

20                      notice was distributed and identify the recipients by name or

21                      department?  Did Caltrans take any other measures to preserve

22                      evidence relating to this litigation at any time?"

23       26.     WOW's counsel concluded the letter by stating, "If you would like to

24 discuss my requests for information for purposes of clarification or narrowing of the

25 requests, please let me know.  Otherwise, we would like the requested information by

26 February 5, 2024."

27       27.     Lynch, Caltrans' counsel, did not respond to the letter for six weeks,

28 until March 14, 2024.  In his emailed response, Lynch:

a.     Refused to answer the questions about Caltrans' legal justification for deleting emails after 120 days, stating that each question "calls for legal analyses and conclusion."

b.     Stated that "[T]he automatic email deletion process *was not suspended and is generally not suspended and is generally not suspended upon receipt of a CPRA request*."  (Emphasis added.)

c.     Stated that *Caltrans did not put in place a "litigation hold" after the Petition was filed.*  He declined to provide any legal justification for failing to preserve evidence after the initiation of this action, asserting that WOW's counsel's questions on this topic "call for legal analysis and conclusion."

d.     Stated that automatically deleted emails are not recoverable.

e.     Refused to produce any internal communications regarding the search for responsive documents because "[t]he emails requested are to and from Caltrans legal division, as well as Amanda Cervantes, and are privileged attorney-client communications." [Cervantes is a public records staffer at Caltrans and not an attorney, and Lynch did not explain how attorney-client privilege would apply to email traffic between Anzo and Cervantes.]

28.     On February 1, 2024, WOW's counsel sent a letter to Lynch requesting 13 categories of public records pursuant to the CPRA that related to the existing dispute.  Petitioner requested the following public records:

a.     Records, including Records of communications, regarding Cervantes' search for Records responsive to the Original Requests made by Wow Media on September 29, 2022.

b.     Records, including Records of communications, regarding Anzo's search for Records responsive to the Original Requests.

c.    Records that describe or confirm Cervantes' training for compliance with the CPRA.

d.    Records that describe or confirm Anzo's training for compliance with the CPRA.

e.    Records that confirm or describe the training for compliance with the CPRA for Caltrans employees (other than Cervantes or Anzo) who participated in any manner in the search for and collection of Records responsive to the Original Requests.

f.    Records, including Records of communications, that disclose Caltrans' search (if any) for Records responsive to the Original Requests stored on personal communications devices in the possession of Caltrans employees.

g.    Records, including Records of communications, disclosing any effort by Caltrans to retain Records responsive to the Original Requests after Caltrans received the Original Requests.

h.    Records, including Records of communications, of any litigation holds distributed to Caltrans employees after the filing or service of the Petition for Writ of Mandate in the Writ Action.

i.    Records that describe or contain data and document retention policies applicable to Caltrans in general, and the Outdoor Advertising division ("ODA") and Office of the Director of Caltrans ("Director") in particular, in effect at any time from January 1, 2020 through and including the present.

j.    Records that describe the email system(s) in use by the ODA and the Director at any time from January 1, 2020 through and including the present, including without limitation records describing back-up systems and methods for retrieving deleted email.

k.   Records, including Records of communications, that may be stored on personal communications devices in the possession of Caltrans employees assigned to the Director regarding the search for Records that are responsive to the Original Requests.

l.   Records, including Records of communications, that may be stored on personal communication devices in the possession of Caltrans employees assigned to the ODA or any other unit involved in the regulation of outdoor advertising regarding the search for Records that are responsive to the Original Requests.

m.   Records of communications, including Records that may be stored on personal communication devices, by and between Cervantes and Anzo regarding the search for Records responsive to the Original Requests.

29.   On February 26, 2024, Caltrans produced only *two documents* in response to the 13 requests:

a.   A single-page memo dated June 4, 2018 issued by the Caltrans "Technology Practice" stating the agency would retain "all E-Mail within the Inbox which includes Drafts, Junk E-mail, and Sent folders for 120 days unless deleted by the owner."  Other data "in the personal folders" would be retained "for two years, unless deleted by the owner."

b.   An internal email string confirming that the October 2022 production was comprised solely of Anzo's records and discussing what further efforts should be made in light of WOW's counsel's October 26, 2022 letter.

30.   On March 12, 2024, WOW's counsel emailed Lynch asking for confirmation that a mere two documents were located after a reasonable search. Lynch responded by email on March 14, 2024 that all non-privileged responsive

documents had been produced.

31.     The production was indisputably incomplete and suggests that Caltrans is continuing to this day in hiding information to avoid accountability and to protect its employees and Defendants.  Just by way of example, Caltrans did not produce its document retention policies that were submitted to the California Secretary of State, as required by statute.  These policies mandate retention of documents in years, not days.  Under a policy dated May 22, 2018, the Caltrans Legal Department must retain enumerated "Subject Matter Files" for at least three years; "Outdoor Advertising" is listed as a "Subject Matter" and the records initially sought by Petitioner (communications with third parties regarding the June 2022 Review, which accused Caltrans of violating federal law by not bringing its outdoor advertising enforcement into compliance with the federal Highway Beautification Act) would certainly fall within that category.  CPRA requests must be retained 10 years; outdoor advertising permit files must be retained at least 10 years after they are no longer "active."  The most recent Caltrans IT Administration policy, approved by the Secretary of State on September 9, 2018, requires "General Correspondence" and "Subject Matter Files" be retained for at least one year after the material is no longer "active."  Caltrans' External Affairs division – which handles legislative affairs and deals regularly with lobbyists, including representatives of Petitioner's competitors in the outdoor advertising industry – must keep all "Correspondence" at least four years.  Caltrans' 120-day email auto-deletion practice causes such communications to be destroyed three and two-thirds years early, however.

32.     No records were produced to WOW on February 26, 2024 by Caltrans relating to the agency's CPRA practices or the manner or reasonableness of its search in response to Petitioner's initial requests, despite the holding in *County of San Benito v. Superior Court*, 96 Cal.App.5th 243, 258 (2023), that such information is relevant in CPRA mandate proceedings.

33.     No records were produced to WOW on February 26, 2024 relating to

Caltrans' email system.  No documents were provided relating to the agency's election to employ an auto-deletion practice for emails, regardless of content, and why 120 days was selected as the deletion date for all unfoldered emails, as opposed to the two years selected for foldered emails and other documents.  Indeed, the 120-day auto-deletion practice, on its face, is inconsistent with *all* of the records retention policies for Caltrans approved by the Secretary of State, as well as the CPRA.

34. The California Secretary of State has informed all state agencies – which includes Caltrans – as that they must comply with the CPRA in their management of emails.  Proper management does *not* include an automated government records destruction practice.  The Secretary of State has adopted the following policy:

> The California Public Records Act . . . defines a public record as, "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." *The CPRA thus applies to email messages and requires that proper identification and care of email be performed by the agency. An agency's records management policy must address email messages to ensure record emails are properly identified and managed. . . .* Email is not considered a record series or category on its own.  *It is simply a format.  Retention or disposition of email messages is done in relation to the information they contain, the purpose they serve, and the relevant line item/records series to which they belong. . . .* The content of email messages may vary considerably and, therefore, must be evaluated on a case-by-case basis to determine the length of time the message must be retained.  Email that provides insight into the organization and functions of an agency and contains content with historical value must be "filed," just as you would a paper record, in an e-folder with similar business or program items.

Cal. Sec. of State, "Electronic Mail Management" (accessed on May 20, 2024 at https://www.sos.ca.gov/archives/records-management-and-appraisal/electronic-records/electronic-records-guidebook/electronic-mail-management (emphasis added).)

35.     The Secretary of State has directed each state agency – which includes Caltrans – to adopt an email policy as follows:

> An agency's email policy should be developed to enhance management of record emails.  An effective policy includes direction on topics such as email filing methods, email subject lines, and storage and retention of email, thereby increasing the accessibility of records.  Policies should include whether the sender or the receiver should save email records, how to determine if an email is a record, and how to segregate record email into the appropriate series and record storage.  Non-record and duplicate emails should be deleted from mailboxes regularly.  If an agency receives a request for an email record for a litigation issue, for example, a well-planned email policy can help ensure that the record is discoverable during its retention period or show that its deletion was properly carried out according to retention policy.

*Id.*  Caltrans has produced to WOW no policy that complies with the Secretary of State's directive that emails be preserved or destroyed based on their content, not on their format.  Whether such a policy exists at Caltrans is unknown to Petitioner.

36.     Any contention by Caltrans that all emails are necessarily transitory or otherwise somehow different than other correspondence fails.  While emails can sometimes be brief and nonsubstantive, "e-mail, especially combined with the ability to attach documents, is also used to communicate important information previously sent by mail or private delivery service." *Golden Door Properties, LLC v. Superior Court,* 53 Cal.App.5th 733, 771-72 (2020).

37.     It wasn't until May 7, 2024 that Lynch, in an email to counsel representing WOW, identified 13 Caltrans employees whose email accounts were searched by the IT Department.  The list of 13 did not include Anzo.  The search terms were "FHWA," "ODA Report," "FHWA ODA Program Review, and "FHWA Review."  Caltrans did not meet and confer with counsel for WOW regarding search terms, and Lynch did not explain how or why those particular terms were used. Lynch did not provide the date of the search in his email disclosing the search terms, or respond to the question when WOW's counsel inquired about the date a second time by email on May 7, 2024.  Caltrans has asserted attorney-client privilege for an internal meeting during which IT was given instructions for email searches.  It is unknown whether Caltrans conducted any searches for outgoing emails with attachments during the critical two-week period.

### ii.     Davidson Kempner's Efforts to Block Discovery

38.     Meanwhile, Davidson Kempner has resisted all efforts by WOW to determine the Defendants' real names.  After WOW served a subpoena in the CPRA Action on Davidson Kempner in New York under the Uniform Interstate Deposition and Discovery Act ("UIDDA"), Davidson Kempner successfully moved to quash in New York state court, on the ground that third-party discovery was inappropriate in public records litigation.

39.     WOW then filed the State Civil Action on July 6, 2023, naming "Does" as defendants and alleging claims identical to those alleged in this Complaint.  It served another subpoena on Davidson Kempner in New York under the UIDDA on July 27, 2023.  On the date set for deposition, August 28, 2023, Davidson Kempner again moved to quash in New York state court, and asked for an extraordinarily distant return date of October 27, 2023.  Not until February 7, 2024 was Davidson Kempner's motion heard by the court.  The court, Judge Nicholas Moyne presiding, took Davidson Kempner's motion under submission and, as of the date of this Complaint, has not ruled on the motion.  WOW's inability to take the Davidson

Kempner deposition for nearly a year *has blocked all progress* in the State Civil Action, which is pending before Judge Daniel Crowley in Los Angeles Superior Court.

40.     The New York state court's failure to rule on the Davidson Kempner motion is contrary to the UIDDA, codified at CPLR 3119, which is designed advance the public's interest in comity and streamline and facilitate discovery in state court civil proceedings.  The court's failure to deny the motion flies in the face of New York's standard for out-of-state discovery, where the objecting party has the burden of showing that the discovery sought is either "utterly irrelevant" or that the futility of uncovering anything legitimate is "inevitable or obvious."  *Matter of Kapon v. Koch*, 23 N.Y.3d 32, 988 N.Y.S.2d 559, 11 N.E.3d 709 (2014) (New York's highest court affirming denial of motions to quash California subpoenas served in New York under the UIDDA).  WOW "need not demonstrate that it cannot obtain the requested discovery from other sources."  *Thomson v. Zillow, Inc*., 51 Misc.3d 1050, 1054, 32 N.Y.S.3d 455 (2016) (citing *Matter of Kapon*) (denying motion to quash Washington State subpoena served in New York under the UIDDA).  "'Thus, so long as the disclosure sought is relevant to the prosecution or defense of an action, it must be provided by the nonparty.'"  *Id.* (quoting *Matter of Kapon*).

41.     That Judge Moyne has neither granted nor denied the motion also has precluded WOW from seeking appellate review in New York.  A written request by WOW for a ruling on the motion has been ignored by the court.

42.     That Judge Moyne has declined to deny the motion to quash and enforce WOW's subpoena in the State Civil Action is particularly inappropriate in light of Judge Crowley's Order of October 11, 2023 granting WOW leave to conduct discovery, including, specifically, the deposition of Davidson Kempner.  Judge Crowley granted WOW's motion over the objections of counsel for Davidson Kempner, which filed briefs and appeared for hearing in Los Angeles Superior Court. In his Order, Judge Crowley found that "Plaintiff has demonstrated good faith in its

delay suing particularly named defendants until it has knowledge of sufficient facts to cause a reasonable person to believe liability is probable. . . . Plaintiff has demonstrated the [Outdoor Advertising Review] was erroneous in alleging that Plaintiff's surface street digital signs in Inglewood were unlawful and subject to federal and state highway regulations, further confirmed by Caltrans at a meeting on January 19, 2023, between Balasubramanian and City representatives. . . . Plaintiff demonstrated that the [Outdoor Advertising Review] was improperly transmitted to Davidson Kempner – in a manner that was not privileged – supported by internal emails at Caltrans that were produced to Plaintiff pursuant to requests under the California Public Records Act. . . . Plaintiff sufficiently demonstrates that it does not have knowledge of the person who circulated the [Outdoor Advertising Review], but that Davidson Kempner has information that would be useful in identifying potential defendants in the instant action."

43.     The First Department of the Appellate Division in New York Supreme Court has held that a party cannot litigate relevance and the disclosure of evidence sought by subpoena under CPLR 3119 in both New York *and* the out-of-state litigation forum.  In *Suresh v. Krishnamani*, 212 A.D.3d 514, 183 N.Y.S.3d 72 (1st Dept. 2023), a Pennsylvania court had determined that the husband in matrimonial proceedings had relevant evidence.  The First Department held: "[S]uch determination is entitled to *full faith and credit* without further inquiry."  *Accord In re Aerco International, Inc*., 40 Misc.3d 571, 574, 964 N.Y.S.2d 900 (2013) ("'When a court of another state has already reviewed the subpoena,' New York courts should afford that determination the 'widest possible latitude.'" (*quoting Hyatt v. State Franchise Tax Bd.*, 105 A.D.3d 186, 962, 964 N.Y.S.2d 282 (2d Dept. 2013)); *Application of Ayliffe & Cos*., 166 A.D.2d 223, 224, 564 N.Y.S.2d 297 (1st Dept. 1990) (affirming denial of motion to quash because "the California Superior Court has determined that these appellants have information that is 'relevant and necessary' for the trial of the pending California cases").

44.     Having been unable to obtain critical discovery that has been approved by the California Superior Court, and having been deprived of its rights to discovery in New York under the UIDDA (or even a ruling on a motion that would decide the issue and allow an appeal if necessary), WOW now seeks to pursue its claims, take discovery under the Federal Rules of Civil Procedure, and obtain relief in this Court.

## FIRST CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

45.     Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 44, as though fully set forth herein.

46.     Defendants obtained and presented the June 2022 Outdoor Advertising Review to Davidson Kempner with knowledge of, and with the intent to disrupt, and actually disrupted, the agreed investment of the Investors in WOW, thereby causing damage to Plaintiff.  Plaintiff is informed and believes that Defendants (some of whom Plaintiff is informed and believes are in the outdoor advertising industry and aware that Caltrans and the FHWA do not have jurisdiction over signage on surface streets) engaged in this conduct while knowing the Outdoor Advertising Review contained information that was false, or probably false, and with the awareness that the publication of that information to the Investors would interfere with, and possibly even destroy, the relationship between WOW and the Investors.

47.     On information and belief, the publication of the Outdoor Advertising Review by Caltrans or FHWA to Defendants was not privileged.

48.     The publication of the Outdoor Advertising Review by Defendants was not privileged.

49.     An economic relationship existed between Plaintiff and the Investors, with a probability of future economic benefit to Plaintiff.

50.     Defendants had knowledge of the relationship between Plaintiff and the Investors.

51.     Defendants engaged in intentional and wrongful conduct, designed, by

means of the unprivileged publication of false factual statements, to interfere with or disrupt the relationship between Plaintiff and the Investors.

52.     Defendants actually disrupted and interfered with this relationship, causing the Investors to withdraw from an agreed transaction.

53.     Plaintiff suffered actual harm as a direct and proximate result of Defendants' wrongful conduct in an amount of damages to be proven at trial.

54.     Defendants' acts alleged herein were willful, malicious, and oppressive, thereby justifying an award of exemplary damages.

## SECOND CAUSE OF ACTION

### Negligent Interference with Prospective Economic Advantage

55.     Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 54, as though fully set forth herein.

56.     Defendants obtained and presented the June 2022 Outdoor Advertising Review to Davidson Kempner with knowledge of the impending sale of WOW to the Investors, and in doing so acted negligently and with disregard for WOW's interests, thereby causing damage to Plaintiff.  Defendants (some of whom Plaintiff is informed and believes are in the outdoor advertising industry and aware that Caltrans and the FHWA do not have jurisdiction over signage on surface streets) engaged in this conduct while knowing the Outdoor Advertising Review contained information that was false, or probably false, and with the awareness that the publication of that information to the Investors would interfere with, and possibly even destroy, the relationship between WOW and the Investors.

57.     Alternatively, Defendants published the Outdoor Advertising Review to Davidson Kempner without acting with reasonable care and failing to investigate the truth or falsity of the Outdoor Advertising Review, or, even if true, failing to act with reasonable care in determining whether the publication of the Outdoor Advertising Review to Davidson Kempner would harm Plaintiff.

58.     On information and belief, the publication of the Outdoor Advertising

Review by Caltrans or FHWA to Defendants was not privileged.

59.     The publication of the Outdoor Advertising Review by Defendants was not privileged.

60.     An economic relationship existed between Plaintiff and the Investors, with a probability of future economic benefit to Plaintiff.

61.     Defendants had knowledge of the relationship between Plaintiff and the Investors.

62.     Defendants knew or should have known that this relationship between Plaintiff and the Investors would be disrupted and cause Plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship, if Defendants failed to act with reasonable care.

63.     Defendants failed to act with reasonable care by engaging in negligent and wrongful conduct, designed, by means of the unprivileged publication of false factual statements, thereby disrupting the relationship between Plaintiff and the Investors.

64.     Defendants actually disrupted and interfered with this relationship, causing the Investors to withdraw from an agreed transaction.

65.     Plaintiff suffered actual harm as a direct and proximate result of Defendants' wrongful conduct in an amount of damages to be proven at trial.

## THIRD CAUSE OF ACTION

### Violation of California Business & Professions Code § 17200

66.     Plaintiff realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 65, as though fully set forth herein.

67.     Plaintiff brings this cause of action pursuant to California Business and Professions Code sections 17200, *et seq.*  Plaintiff has standing to pursue such cause of action based on the underlying claims for business interference, and on the facts alleged herein, as a competitor with Defendants.

68.     Business and Professions Code section 17200 states, in part, that,

"[u]nfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice." The commission of the unlawful and/or unfair business practices alleged herein constitutes unfair competition within the meaning of section 17200 of the Business and Professions Code.

69.     Specifically, Defendants have engaged in unlawful and unfair business practices by conveying to Davidson Kempner the June 2022 Outdoor Advertising Review with the knowledge that it was false and was likely to disrupt the business relationship between Plaintiff and the Investors, and Defendants did so with the intention that such disruption would occur.

70.     Further, Defendants (some of whom Plaintiff is informed and believes are in the outdoor advertising industry and aware that Caltrans and the FHWA do not have jurisdiction over signage on surface streets) conveyed the Outdoor Advertising Review to the Investors with the awareness that the findings in the Outdoor Advertising Review were untrue, in particular the allegation in the Outdoor Advertising Review that off-site outdoor advertising displays along surface streets not adjacent to freeways in California were subject to the federal Highway Beautification Act and the state Outdoor Advertising Act, and were within the jurisdiction of Caltrans, and required (but lacked) permits from Caltrans, and that all of WOW's digital displays in the City of Inglewood violated federal and state laws.

71.     In conveying the Outdoor Advertising Review to the Investors, with the knowledge that the findings in the report were false, Defendants intended to, and did, mislead the Investors, causing the Investors to withdraw from their agreement with Plaintiff. Defendants were aware that the Investors, relying on this false information provided by Defendants, would likely withdraw from the agreement.

72.     On information and belief, the publication of the Outdoor Advertising Review by Caltrans or FHWA to Defendants was not privileged.

73.     The publication of the Outdoor Advertising Review by Defendants was not privileged.

74.    Plaintiff is informed and believes that some or all of the Defendants are competitors of Plaintiff or have other economic interests that would be advanced by the destruction of the transaction between Plaintiff and the Investors.  Alternatively, Plaintiff is informed and believes that Defendants desired to harm the interests of Plaintiff, including but not limited to possible disruption of the contractual relationship between Plaintiff and the City.

75.    As a result of the conduct as detailed herein, the acts of the Defendants constitute unlawful and unfair business practices within the meaning of California Business and Professions Code sections 17200, *et seq*.

76.    Plaintiff has been and continues to be aggrieved and harmed by Defendants' unlawful and unfair acts and practices.

77.    Accordingly, Plaintiff seeks an order of this Court compelling Defendants to provide restitution and to disgorge the monies received and the profits realized by Defendants as a result of their unlawful and unfair business practices, and injunctive relief for the Defendants to cease such unlawful and unfair business practices in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    For actual and punitive damages and such other relief as provided by law;

2.    For compensatory damages, according to proof;

3.    For injunctive relief, restitution and disgorgement;

4.    For prejudgment and post-judgment interest on any monetary relief;

//

//

//

//

5.     For costs of suit incurred herein, including reasonable attorneys' fees by law or by statute as against Defendants; and

6.     For such other and further relief as the Court may deem just and proper.

DATED:  June 14, 2024

ALGER LAW APC

_____
Timothy L. Alger

Attorneys for Plaintiff WOW Media Inc.

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff WOW Media Inc. requests a trial by jury on all issues so triable.

DATED:  June 14, 2024

ALGER LAW APC

_____

Timothy L. Alger

Attorneys for Plaintiff WOW Media Inc.

COMPLAINT